Inc., and a utilization of commercial vehicles which might have been prevented by the breaching  Your Honor, I'd like to reserve three minutes for rebuttal. Good morning, your honors. My name is Michael Jacob. I'm appearing on behalf of the plaintiff appellant, Bay Corrugated Container. I am back before you on a second appeal from the district court's order. Dismissing my client's petition to enforce a consent judgment and granting the defendant's Rule 12B6 motion to dismiss, without first affording my client the opportunity to brief the issue. I'm not going to regurgitate the facts. I think they're all set forth in the briefs, but I'd like to make three comments. One is our enforcement efforts, as long and as arduous as they have been, have now been delayed by an additional five years because we've been consumed in a five year period of two appeals. Secondly, lost somewhere in all the finger-pointing among everyone in this case is a very serious case here. Gould, Inc. made an agreement to remediate contaminated property in the state of Michigan. They entered into a settlement agreement. The settlement agreement was approved by the district court. A consent judgment was entered by the district court. And the district court retained jurisdiction to enforce that. Reading many of the cases under Rule 41B, this isn't an abandonment of a complaint in the middle of the case. This is a case all about getting the defendant to live up to its obligations and remediate contaminated property. There's a lot of serious issues in this case. It involves lead, it involves volatile organic compounds. In 1994, the consent judgment was entered. The parties worked assiduously for five years to implement the remediation plan. In 1999, the negotiations broke down over what the scope of that obligation was. And they filed a petition to enforce its consent judgment. The district court referred the parties to Dean James Barnes at the Indiana University Environmental School of Law, I believe it was. An outline of settlement was entered into in 2000. The parties continued to negotiate after the battery business of the defendant was sold to Exide Technologies. They went into bankruptcy in 2002. The parties negotiated up to 2006. Both parties filed proofs of claims in the bankruptcy court. I believe it was in Georgia. And in 2009, the bankruptcy court wanted to pursue the proofs of claim, and Bay contacted the court and said, we have to proceed with the petition for the consent judgment. The rest is history. The last five years, we've been back and forth to the Sixth Circuit, because the district court somehow feels Bay went to sleep. The court didn't go to sleep, and the defendants didn't go to sleep, but Bay went to sleep. So we came here to Cincinnati three or two years ago, 2009. And this court remanded this case back to the district court to make a factual record. And of course, the district court did not do that. It called for briefing. We briefed the issue. We could not take any discovery. We also said that, excuse me, we didn't say briefing. We said, and we didn't have enough of a determination to rule on the, to affirm on the alternative ground that was relied upon by the district court. Correct. And that at least facially permitted the district court to provide that record and the alternative to doing what you just laid out. Well, I think this court also remanded on two questions. One was the Rule 41B, and secondly was the issue of novation. Right. Because that was key. Either one is sufficient if it's properly supported. I would agree both counts could result in a dismissal. Each count. Either. Either or. Correct. I mean, you can't have a- If the district court relied on the other one, just because it did it that way doesn't mean it was wrong. I mean, you can say it made a mistake when it did it, but- Well, we didn't say you had to rule on the first one. We just basically said you either had to rule on the first one or provide a sufficient record to rule on the second one. Okay, so- That's a fair reading, isn't it? I wasn't on that panel. No, I understand. It's a fair reading to the extent, though- It's a little bit critical to say that the district court just ignored our instructions. Our instructions, fairly read, said you can go down one of two routes, and he went down the second route. Okay, but if we're going to go the second route, Your Honor, I would- It has to be supported. It has to be support. And I asked the district court to allow me to take discovery, to develop the factual record that was so omitted in the first record. And I was denied that opportunity. For example, I wanted to take the deposition of the attorneys who were working the file between 2000 and 2006 to see what everyone was doing. The district court said I could not do that. The key issue here that the defendant keeps pounding the plaintiff with, and the district court made a specific point in its opinion, was the fact that my client made a strategic decision after the settlement discussions stalled, and I prefer to use the word stalled. They weren't cut off. Nobody said we're leaving or left the table. They stalled, okay? And then my client made a decision. Oh, it just means nothing happened. I understand that. I don't know what- That's fair. Well, I mean- Each lawyer stopped calling the other lawyers that- The draft, as the record shows, the documents were being exchanged between the lawyers. It wasn't about- I was not in the case at that time. And- Sort of petered out. That's it. I mean, the lack of responses to each other suggested that there were some critical issues. At any point along the way, did you send a little note to the district court to say, by the way, we're still working on this? No, Your Honor, and that's an excellent point because- That's a really kind of critical point because as I read what's going on here, there seems to be some kind of an assumption that somehow the district court should have been out there monitoring or demanding status reports or bugging you to find out what was going on. And I'm not sure I know any basis for that. Well, what I'm suggesting, Your Honor, is this is not a model case. This is not a model instance of case management. Yes, the plaintiff had a petition to enforce its consent judgment. And the plaintiff- It was sent to mediation. It was sent to mediation with the- And did the results of the mediation, whatever they were, get relayed back to the district court? There is nothing in the record to suggest that. And in the February 2000 transcript, the district court specifically said, which was a triggering event for the briefing of the defendant's Rule 12b6 motion, that the district court was going to await a report back from Dean Barnes. That's on the last page of the transcript and quoted in our brief. To our knowledge, and the record is devoid of this, and there was another deposition I wanted to go take to see why Dean Barnes, if he did not report back to the court, why he didn't report back to the court, and why the court, perhaps, in managing its own docket, didn't contact its own court-appointed mediator to see what might have been happening. So, I mean, there's a confluence. But the parties didn't have any obligation to do anything about it. Not according to the transcript, but I'm not saying good practice wouldn't have suggested that. My point of being here a second time is somehow when all of this gets digested, the whole house is coming 100% down on my client. And that's why I'm here, because I don't think that's- Enforcement. Correct, but we also had a dispositive motion pending against us, which the district court did not, didn't bring for hearing, because the district court deferred that 12B6 motion until the matter went to mediation. So, I would think, I'm just surmising, the defense counsel, when settlement discussions, for whatever reason, stalled, stopped, whatever, may also likewise might have wanted to call the court and say, I have a dispositive motion, call the question. But- The court never ruled on the dispositive motion? Not until the end, in 2012, which is this bill. And they wouldn't allow us to file any opposition papers to it. And mind you, I think another important fact here, Your Honor, is that the defendant filed a proof of claim in the Exide bankruptcy for the very same claim that we're making. So, they're following the bankruptcy. So, why are the lawyers sitting on the sidelines, monitoring the proof of claim in the bankruptcy court of Exide Technologies, and nobody is calling the court? I agree with you, Judge Batchelter. Why nobody called? I think that's an important question. I'm not saying they should not have called. Of course they should have called. So should the defendant. So should have Dean Barnes. And perhaps maybe the court should have issued a show cause order. I take your argument of unfairness. It does seem kind of... Nobody tipped off the court that this thing had been... Exactly. Right. So why should one party bear the brunt or the brunt of that, rather than the other party seems to be the nature... That's the thrust of my... But I guess the answer is, if the judge needs to be tipped off in order to grant relief, and one side grants relief, doesn't practicality suggest that the party that wants relief is the one that needs to tip off the court if nobody else does? I would agree. But you've got two parties wanting relief here. You've got the plaintiff who wants to enforce a consent judgment, and you've got the defendant who has a dispositive motion pending. So you've got two parties that want relief, and neither one of them are calling the court. My theory, Your Honor, is... Which one benefits if it just dies? Well, that's prejudicial to everybody. Because while it's... If the case just dies, I guess... That's prejudicial to you. Well, of course. Okay, that's a good... If the case just dies, I guess the defendant likes it, doesn't he? He doesn't have to do what he promised to do, and the court's ordered him to do it. Right. So... So when you have a... It just seems like logical. I can't cite rules, but it seems logical that if you have something that's just stalled, as you say, everybody's forgotten about it, the lawyers have been replaced, and nobody... Well, I don't think... Well, I'm just hypothesizing. Where something just stalls out, and somebody should tell the court, you would think that logic would be the people who want relief in the case would be the ones who would bring it to the court's attention. As opposed to the people who benefit from having it stall out. Well, now we're balancing who's going to get the better benefit, but I think both parties have an obligation to knock on the door of the court. That's fair. But if the... But why should one party... For 20 years, it seems like the answer is, apart from the equities, you just say, this is done. Well, it's not 20 years, Your Honor. It's really from 2006 to 2009. I'm just exaggerating to make the point. It would seem like, you know, you could say, even if you wait 50 years, it's both sides' fault, so we now have to litigate it. Or you could say, we waited interminably. It's both sides' fault. Court's not going to do anything. Well, at some point, I guess, pox on everyone's houses, but I'm focusing on the time period where the parties were, at least to the lawyers, were talking. Not that the lawyers weren't talking to the court, but they were talking to each other, so... By direction of the district court. So from 2002 to 2000... It stalled, though, right? In 2006, it stalled. Or we can pick whatever word we want. Between 2006 and 2009, there was not a lot going on. It's a three-year hiatus. Excuse me? Nothing going on. Okay. Nothing. Okay, I agree. I mean, I can't find anything at this point. I can't take discovery, but I'll accept that for the sake of argument. This is a three-year hiatus. It's not 10 years. It's not 20 years. It's not 15 years. Because nobody is being kept in the dark, except obviously the court, because the Dean Barnes didn't call the court. The plaintiff didn't call the court. The defendant didn't call the court. I can't fault that. That's part of the record. As I theorized in my brief, this is case dates back before PACER, because now with PACER, you know, courts are generating orders to show cause. If you don't file proofs of service, you don't. So, I mean, technology would have been a wonderful thing in this case, but it did not exist in 1999. It didn't happen in the Eastern District of Michigan until June of 2004. So, I'd like to think if we had this problem from June 2004 and afterwards, I wouldn't be standing here today because someone would have rung a bell. So, I stand before you today because under the four-factor test, which has been well-briefed by everyone, nobody has pointed to any contumacious conduct to my client other than inattention or inactivity. Some of the cases that you have suggested as alternative sanctions are dismissal without prejudice. And the other side said if that happens, it'll just start all over again. Correct, because we're within the statute of limitations. In Michigan, it's 10 years. Are you saying that would be a proper remedy on the part of the district court? Because so many of those cases, that's what it is. Sure. I mean, if the case is dismissed with prejudice, we would refile it. And it would not be barred by the statute of limitations because it's been told under Michigan law, between 1999 and the date of the dismissal without prejudice. I don't know if that would be a productive endeavor. But per se, I don't know what happens because it gets the case back at issue, which is what this case should be. So, however we get there, my client certainly is going to be happy, but I don't think my client should bear 100% of the fault for the inactivity when it was contributed to by more than one person when my client did not engage in any contumacious conduct or whatsoever, stubbornly disobedient. My client was never told to do anything by the court, and it absolutely refused. I mean, that seems to be- You didn't prosecute the case. Well, we were prosecuting with the lawyers up until 2006. I agree with you, Your Honor. I mean, we were told to go to mediate and try to settle. And I think that was following the court's direction. Well, that obviously was following the court's direction. The concern that I have is sort of the underlying assumption here that because the district court didn't have enough to do, it should have on its own been following what you were doing, or that the defendant, who really wanted this whole mess to go away anyway, ought to have alerted the court that this case needed to be pursued. And there's a logical gap there to me. Well, I guess I'm advocating, Your Honor, in this post-judgment environment that we have in this case, where both sides are seeking affirmative relief. Both sides have some obligation to take care of their own matters. And there's a reason nobody did. And I can't explain that to you because I haven't had the opportunity to really drill into it. It's unusual. I've been practicing 43 years. I've not seen this type of scenario where nothing happens on a case by the judge, a mediator, defense counsel, a plaintiff's counsel. I mean, it hasn't ever happened to me in 43 years. I don't know how to get my arms around it. Another question before he sits down. I'm sorry. On the prong about alternative sanctions, which prong is that? Is that one of the four prongs? It's one of the four prongs. Lesser sanctions. Lesser sanctions. Yes. And the lesser sanction you're suggesting is dismissal without prejudice to avoid having the burden of this fall 100% on you. But wouldn't that make the burden of it fall 100% on the other party? Because you say, well, we'll just come back. And so all of that delay is forgiven. Well, that would be the penultimate lesser sanction. I think the more appropriate lesser sanction would have been an order to show cause to everyone. An order to show cause on our part. That's not a sanction. That's just figuring out what a sanction should be. When I've received an order to show cause from either state court or a federal court, if I remember, I can't quote them verbatim. But on such and such a date, you have to appear in court to show cause why you haven't filed a proof of service or your case will be dismissed. You have to show cause why your case won't be dismissed. I mean, there's a reason stated. And that gets everybody's attention. Figuring out if, after the order to show cause, we get all the arguments that you're making today, which is presumably what would be argued. And I would add that. That's not a lesser. Is it a lesser sanction? Is that what the prong says? I'm asking what a lesser, if there's an identifiable lesser sanction. I have trouble identifying. But I'm not seeing how dismissal without prejudice, in this context, is not a lesser sanction. It's a non-sanction. Well, when you already have a judgment, and you're trying to enforce it within the period of limitations, and it becomes inactive, and I can't really articulate one that. Are the only lesser sanctions that you're identifying are dismissal without prejudice? Without prejudice. Or a show cause. Or a show cause. That comes to my mind as I stand here today. Because the case, effectively, is over with the consent judgment. One party won. Anyway, thank you for your time. May it please the court. The Supreme Court recognized in Link versus Wabash Railroad that district judges must have the inherent authority to use the sanction of dismissal when a claim lays dormant for an inordinate period of time due to the inaction or dilatoriness of the party seeking relief. Nothing that counsel for Bay Corrugated has said yet changes any of the dispositive facts in this case, which is that, first, Bay Corrugated made a strategic choice to allow its 1999 petition to lay dormant for at least seven years, and arguably longer. And secondly, something he hasn't. You had a motion that was lying dormant as well, though, right? I'm sorry? You had a motion that was lying dormant as well? No, I had no motion. I should have clarified. I'm sorry. I'm here representing intervener, Appley Gold Electronics. The other side had a motion. Well, but that's an important point, Your Honor. Because counsel for Bay Corrugated has argued the other side should have done something. The other side should have notified the judge. There was no other side as of 2002. The facts in, I'm sorry? That corporation dissolved or went through? Yes. And that was the end of it. So you were a party? No. You were never an intervener? Never. No, not until appeal. We intervened on appeal. I'm sorry? When did you intervene on appeal? 2010, I believe. And the reason for that is we were, Gold Electronics is in the nature of a party being founded by a bill collector who says, you're liable for this debt that you don't think you owe. But if you don't pay up, we're going to take you to court. Bay Corrugated has been threatening to take my client to court since 2002. And in 2009, when Bay Corrugated finally popped up in district court, they were the only party left to explain to the court what was going on. The original defendant, Gould, Inc. had dissolved much earlier. And their responsibility had been assumed by Exide. Exide, who, by the way, settled the 1999 petition in 2000, which I believe mooted this case. But Exide, who settled the case in 2000, had gone into bankruptcy in 2002. That's why Bay Corrugated was filing proofs of claim. So as of 2002, there was no defendant in the case to respond to anything Bay Corrugated was saying. But we were being hounded informally  you should step into Exide's shoes. You should agree to take on this liability. And we said no in 2002, and 2003, and 2004, and 2005. And finally, in 2006, Bay Corrugated realized that we were never going to voluntarily take over this liability. And what did they do at that point? Absolutely nothing. They made the decision to stay idly for yet another three years until 2009. So you're saying even if the court dismissed without prejudice, it'll go back and the same thing's going to happen again? That you're not responsible for anything? I don't know what would happen, Your Honor. I assume that they would refile. I assume that they would finally sue Gold Electronics. How we would deal with the issue of latches and statute of limitations when you're talking about an entity that's never been a party in the case, I don't want to predict how that would occur. But it would seem to me that all of the arguments we're talking about today would be just as true if Bay Corrugated were to assert a claim against Gold Electronics in 2015. Because that claim against Gold Electronics, I assume you would be arguing, wouldn't go anywhere because the Seventh Circuit said that Gold Electronics doesn't have any liability because of the GNV, all of the intricacies of that. That would be one of the issues we would raise. We would start there. That would be an issue that would be developed factually. Judge Friedman jumped to that point in his original decision based on not a very complete record and decided not to go that far in his second decision. But I also want to emphasize because- Just so I'm clear, you intervened, but you didn't intervene until 2010, is that the- Yeah, we intervened for purposes of defending Judge Friedman's order on appeal. But you intervened in the district court. Well, yes, the rules allow you to move the district court for leave to intervene for purposes of appeal. And my recollection is the standard for granting such a motion is a little less stringent at the district court level than if you- I'm looking at the grant, the order grant. It says granting Gould Electronics motion for leave to intervene and granting Gould Electronics motion for leave to respond to plaintiff's motion for reconsideration. Right. The district court had issued a dismissal order. Bay Corrugated moved for reconsideration. Again, counsel for Gould, Inc. and Exide had notified the court that he no longer had a client and that he was not going to participate. So the notion, again, the main point here is there was nobody but Bay Corrugated to notify the court of anything after 2002. No one was defending the claim after 2002 because Exide had reorganized under Chapter 11, had said file your proof of claim, collect your money on the settlement, and that was it. The other point that- You're saying that- I'm sorry? If the plaintiff got a judgment, there was nobody to get a judgment against, is what you're saying. Well, there certainly was no live party in the case at that time. And I would argue there was no pending dispositive motion at that time because that dispositive motion was filed by Gould, Inc. or GNB on behalf of Gould, Inc. and they were gone. So the note, and I should point out that this is not a ruling on 12b-6. The matter that's before this court is under Rule 41b for failure to prosecute. The court did not rule on the merits of the 1999 petition. It ruled that Bay Corrugated had slept on its rights for a very, very long time. And that constituted a failure to prosecute. If we were to say there is a marginally lesser sanction, which would be a dismissal but without prejudice, what is Gould Electronics' situation with regard to being sued now and any statute of limitations? Honestly, Your Honor, we haven't researched that because the issue of dismissal without prejudice was never raised by Bay Corrugated until two days ago. I know it wasn't, but I'm just trying to figure that out. Since Gould Electronics wasn't a named party to begin with, I'm just trying to figure out how Bay Corrugated would be able to proceed against Gould Electronics at this point in any event. Well, the last five years have taught me that they'll argue something. They'll keep it going. Were these four factors, were they argued on remand from this court? Yes, they were. So what was the argument with respect to that factor? Lesser sanctions? The district court, I'm sorry? The part of your opponent. Bay Corrugated just argued that the district court should think up some lesser sanction. It did not suggest any lesser sanction. It merely said, you should have thought something up. And the district court said, I didn't think something up because there isn't one that would do any good. And I'm sure you think that's exactly true. But on the other hand, in your mind, is there some lesser sanction here? No, there is not, Your Honor. And that's the issue that Bay Corrugated has danced around here that we need to talk about, which is prejudice. That is the second of the four factors. And in this case, the prejudice that the district court found is substantial, it's real, and it's irreversible. To understand that prejudice, you have to understand the facts that were in dispute in 1999. By 1999, Gould and GNB had conducted a substantial cleanup at Bay Corrugated's property. And at that point, there was a dispute over whether all of the Gould-related contamination had been cleaned up. Because you see, Bay Corrugated continued to conduct industrial operations on that site of its own. So by 1999, the lead issues from batteries were addressed. But there was this solvent contamination. And the solvent involved solvents that Bay Corrugated acknowledged using as well. So the issue in 1999 was, did that solvent contamination arise from Gould's operations, which had ended in 1973, or Bay Corrugated's operations, which had continued from 74 up through 99? That would have been a difficult factual determination for a court to make in 1999, because at that point, the allegations would have been 20, 30 years old. The district court reasonably found that Bay Corrugated's failure to press its action had made that determination prejudicially more difficult. For example, in 2000, counsel for Bay Corrugated identified seven living witnesses who had knowledge of Bay Corrugated's use of the solvents in question. He had a list of eight, but one had already died by 2000. Well, during the time period from 2000 to 2009, at least two of those seven witnesses passed away. We know that from comparing Social Security death records to the names on the list. There may be more, because names are often common and you can't tell. But we know that at least two. We know now that Social Security has got huge numbers of people who are at least 112 years old. So that's irreversible prejudice. You don't bring people back from the dead to give you their testimony. But secondly, the court found that with respect to those witnesses who were still kicking, their memories invariably about events that had occurred in the 50s, 60s, 70s, 80s, their memories had invariably faded over that 10-year period as well. And thirdly, the court found that since Bay Corrugated had continued to conduct its own industrial operations from 1999 onward, the court's ability to figure out who was responsible for conditions that existed in 1999 was probably going to be more difficult, because now the conditions in 2009 might not be the same as they were in 1999. So the court specifically found on the record that irreversible significant prejudice. That can't be remedied by a dismissal without prejudice, because as soon as that case gets refiled, the exact same prejudice is going to be presented. The witnesses aren't going to be back, the conditions at the site aren't going to be the same, and memories aren't going to have gotten any better. It didn't find contumacious conduct on the part of the plaintiff, did it? No, Your Honor, he didn't, and that's because he wasn't required to under the precedents applicable to this case. First factor, though. The first factor is delay due to willfulness, bad faith, or fault. That's the only standard that has been universally applied by all the panels of this court that have heard Rule 41b actions. Now, different courts have suggested different formulations in sort of a variation on that, but those generally reflect the very fact-intensive nature of this issue and the varying fact patterns of those cases. What those courts have also talked about is a clear record of delay. You don't get much clearer than a strategic decision to suspend your claim for nine years. Or they've talked about reckless disregard for the effect of conduct on proceedings. Again, a strategic decision to suspend your claim is showing reckless disregard for the effects that that delay is going to have. The court has never required that it must be contumacious conduct. It's indicated that that's one example of the kind of behavior that would support a dismissal. But it's willful, bad faith, or fault. And in this case, there's undisputed that it's willful. And the court found that it's fault. The court applied the proper standard. What's the third one? Fault? Yeah, that Bay Corrugated was at fault for not pressing its claim. As long as it's enough if you're just at fault. You don't have to be in bad faith. You don't have to be in bad faith. Although, bad faith has been defined by this court as either an intent to thwart proceedings or a reckless disregard for the effect of the conduct. And clearly, what Bay Corrugated engaged in here was reckless. They knew they were the only party still around. They knew that the district court didn't know what had happened. And they allowed the case to sit. Now, let me just say that. I want to trample on Judge Seiler's train of questioning. I wanted to ask him an additional question. What about notice? Seems like that prong at least cuts against you because if sometime during these nine years the court had said, this is going to get thrown out unless something happens in this case, which might be good practice for district courts to do every five years or so, they didn't get that. Let's say that the court had done that. Let's say that the court had done that. The court had sent them off to mediation. And rather than expecting Bay Corrugated to let the court know if it still needed the court's involvement, let's say the court had said, no, I'm just going to be proactive here. I'm going to check to see if you have actually complied with my orders. What he would have been told is, your honor, the case is settled. We reached an agreement. We have a binding agreement. The case has been settled. The district judge would have had no reason to issue any kind of notice or warning because Bay Corrugated went off and settled their claim in 2000. That's what the mediator would have said? That's what the mediator would have said, too. In fact, he was the party who was going to enforce the settlement that Bay Corrugated and Exide agreed to. That's why I believe that even before you talk You argued below with respect to that prong? Yes. And I should also point out that there was no argument below by Bay Corrugated on the notice prong. They affirmatively conceded that there was no notice objection on their part. They only decided on appeal that they were going to assert a new argument, which is that they should have gotten notice. So applying this court's standard for waiver, none of the factors are satisfied here. Where do we find in the record the affirmative waiver of any objection to the lack of notice? I don't believe there's any mention of notice in the reply brief. In the appellant's principal brief, they say that by allowing Bay Corrugated to provide both briefing and evidentiary support, the court has cured any deficiency of notice in the case. I believe in their principal brief on remand. And it wasn't until they got to this court that they decided that was not a good argument, not a good position to take. But beyond that, if I could answer Judge Rogers' question regarding the notice issue. If you allow them to avoid the waiver rule in this case and argue de novo to this court, you still uphold the district court's judgment because notice has never been an absolute prerequisite to dismissal. In fact, Link v. Wabash was the case. Weighing these factors, you've got one factor that weighs against you if you make that assumption. And you've got the first factor, which takes into account at least whether there's good or bad faith or not. And you can say it's their fault without saying there was bad faith. Factors start to balance a little bit. Well, nothing balances the prejudice that occurred here. That's irreversible. That can't be cured. And I would argue that I'm not just arguing fault. I'm arguing clear record of delay and reckless disregard for the effect of its conduct. But keep in mind what the Supreme Court said in Link about notice. There was no notice provided in that case. And what the court said is notice is a contextual issue. You have to look at the facts. And you have to make a determination of the extent to which the party could have appreciated the circumstances and could have appreciated whether its conduct was acceptable or unacceptable. And that's the test that would be applied if you allow Bay Corrugated to argue de novo on the notice issue. And I would argue that this is not pro se, unsophisticated plaintiff. This is not oversight, inadvertence. This is experienced litigators saying, you know what? We're not going back to the court, because we want to see how the Exide bankruptcy turns out. And while they waited to see how the Exide bankruptcy turned out, witnesses died, memories faded, conditions changed. They haven't given you a compelling reason for why the district court abused its discretion. I mean, I have yet to find a case in this circuit where this court has excused seven years of willful delay. I respectfully request that this court affirm the judgment of the district court, either on grounds for failure to prosecute or Article III mootness, since the claim was settled in 2000. Thank you. Thank you, counsel. Your Honors, let me just talk about the notice issue, because it just keeps coming up. In 2009, yes, we did say we had notice of an opportunity to file briefs with the district court prior to the first appeal on the issue of Rule 41. The record is what it is, and we said what we said. We didn't say we received notice that there was a sanction of dismissal. The record is abundantly clear that the first notice that they faced the prospect of dismissal wasn't until after the first remand in 2012, when Judge Friedman issued his note of order, wanting briefing on mootness, Rule 41, and the possibility of dismissal. That is the very first time the district court threatened the sanction of dismissal. 2009. But you did say that the court has cured the defective notice condition. But not for dismissal. For an opportunity to respond to Rule 41, and we said that in our briefing papers. The threat of dismissal didn't come until after the first remand. That is the record. We say that in our brief. I mean, I could argue it further, but that's the way we presented it. What it literally says is that by setting a briefing schedule, including the issue of whether this case should be dismissed pursuant to 41B, the court has cured the defective notice condition present at the time of its prior decision. What's that mean, exactly? Which brief are you reading from, Your Honor? I don't have my thing. Document 149. Well, our brief, I think we've responded to it in the second appeal, how we've clarified what we said in 2009 and what we say in 2012. But my recollection is the word dismissal in notices from the court did not come until after the first remand. Secondly, the issue of Gould, Inc. being, no question, Gould, Inc. has reorganized itself out of existence. That is an issue that we want to pursue if we get the opportunity for remand. In fact, when Gould, Inc. was dissolved, in 1994, Gould, Inc. still signed the consent judgment, even though they didn't exist. That's part of the record. Gould Electronics signed the consent judgment. In 1999, when they filed their Rule 12b-6 motion, Gould, Inc. appeared by Mr. Ormond. So they're still holding themselves out as being somewhat in existence when they're appearing under that name. They've never made any effort to substitute their name or substitute another entity in the case. So that's the shell game, which is the mood issue, which is the novation issue. They want to take the position that there's been a novation. And therefore, if you've made a settlement with Exide, it's over. But you can't have mootness until the court decides the issue of novation. And that's something that this court, this panel, remanded back on the first time that district court elected not to do. With respect to the witnesses that are unfortunately no longer available, what's not identified here is the fact that the testimony or the information that they would want from those witnesses, they don't say what those witnesses would offer that is no longer available to them. If there's witnesses around that still remember it, if there are business records and documents that are still around that would corroborate it, this isn't a criminal case where a key prosecution witness passes away and then there's no case. So yes, there's some degree of prejudice. But the point is, Gould does not offer how they're prejudiced and what they're not going to be able to defend against the case. Do you agree that our scope of review of the evaluation of these four factors is abuse of discretion? Yes. And lastly, in response to defense counsel's theory of what the Dean Barnes might have reported to the court or might not have reported to the court, I think that is conjecture. I think it's speculative. I'd certainly like to know what he would have reported. But I'd also caution the court that the outline of settlement that was signed in 2000 required the consent judgment to be amended, and it never was. Thank you. Thank you, counsel. Case will be submitted in the next two days. Thank you.